# U.S. Bankruptcy Court

## Eastern District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 6/17/2020 at 5:39 PM EST

File another claim

| | |
|---|---|
| **Case Name:** | Chang Hua Wang |
| **Case Number:** | 20-12013-jkf |
| **Creditor Name:** | NewRez LLC d/b/a Shellpoint Mortgage Servicing<br>PO Box 10826<br>Greenville, SC 29603-0826 |
| **Claim Number:** | 8    Claims Register |

**Amount Claimed:** $214,293.87
**Amount Secured:** $214293.87
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**POC 6-17-2020.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=6/17/2020] [FileNumber=29206529-0] [3ad5c5158ce70097be44f12e26a035557436c8fbbb9ee9bf9ee4ef1b4ca5d1943f46cbfbd326c6e845a65a772aedb9cfdf61fcec469070dd9daacc0ad6ee928e]]
**Document description:**Exhibit 410A History
**Original filename:**C:\fakepath\Client 410A.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=6/17/2020] [FileNumber=29206529-1] [a7d3d9b471b3bec3fb42b66cb36c5af563d9800c44250640d7c61380c77dfba27f55fb49e345553e4679bfdcb57d0b87dcdb41d52447f97adee252b1c20d03f1]]
**Document description:**Exhibit Escrow Statement
**Original filename:**C:\fakepath\Escrow Statement - REVISED.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=6/17/2020] [FileNumber=29206529-2] [384575bf24e158d13db896daaa7e75cd2868d11e8ef9491ce51da42e64fea5fb1824c9239fe85b581fbc53f95ab584ba0e5a4533bbb264e83550f7409aa77798]]
**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Loan Documents -REVISED.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=6/17/2020] [FileNumber=29206529-3] [94e4b387f5cd5e900e7d30e97c8c99775e1554a81891a241f1629ec7d7f06bce77cd8163220aa7f67f3ea1f9c0821818a93b7b49bf4911d16c16c44db3f7a1c9]]
**Document description:**Service List
**Original filename:**C:\fakepath\COS 6-17-2020.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=6/17/2020] [FileNumber=29206529-

4] [4b33b67f4ae84a2d86c985e3a59691aae94145a8a1be77b10b9575328d822ad606
28fdadcf34e117e215bdf1843ab622aefaed8f4fc93ce4e32fda348bfaee7f]]

**20-12013-jkf Notice will be electronically mailed to:**

MICHAEL SETH SCHWARTZ on behalf of Debtor Chang Hua Wang
msbankruptcy@verizon.net, schwartzmr87357@notify.bestcase.com

REBECCA ANN SOLARZ on behalf of Creditor NewRez LLC d/b/a Shellpoint Mortgage Servicing
bkgroup@kmllawgroup.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

SCOTT F. WATERMAN (Chapter 13)
ECFMail@ReadingCh13.com

**20-12013-jkf Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1    Chang Hua Wang
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number   20-12013 JKF

---

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. **Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

---

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | **NewRez LLC d/b/a Shellpoint Mortgage Servicing**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes.  From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| **NewRez LLC d/b/a Shellpoint Mortgage Servicing**<br>Name | **NewRez LLC d/b/a Shellpoint Mortgage Servicing**<br>Name |
| **PO Box 10826**<br>Number        Street | **PO Box 10826**<br>Number        Street |
| **Greenville, SC 29603-0826**<br>City        State        Zip Code | **Greenville, SC 29603-0826**<br>City        State        Zip Code |
| **800-365-7107**<br>Contact phone | **800-365-7107**<br>Contact phone |
| **mtgbk@shellpointmtg.com**<br>Contact Email | **mtgbk@shellpointmtg.com**<br>Contact Email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known)_____          Filed on _____<br> MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes.  Who made the earlier filing? _____ |

---

Official Form 410                          **Proof of Claim**

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    **7164** |

7. **How much is this claim?** **$214,293.87**

Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.
    **Nature of property: 1001 Mayflower Drive Quakertown, PA 18951**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:    Deed of Trust, Mortgage, Note**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured: $214,293.87

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$5,025.55**
Annual Interest Rate (when case was filed) **3.875%**

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

Official Form 410    **Proof of Claim**    page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(  ) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/17/2020
                   MM / DD / YYYY

**/s/ Brian C. Nicholas, Esquire Attorney ID# 317240**

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | **Brian C. Nicholas** | | |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | **Bankruptcy Attorney** |
|---|---|

| Company | **KML Law Group, P.C.** |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | **701 Market Street, Suite 5000** | | |
|---|---|---|---|
| | Number    Street | | |
| | **Philadelphia** | **PA** | **19106** |
| | City | State | ZIP Code |

| Contact phone | **201-549-5366** | Email | **bnicholas@kmllawgroup.com** |
|---|---|---|---|

**Mortgage Proof of Claim Attachment**                                                                                                              **(12/15)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of the Date of the Petition | | Part 4: Monthly Mortgage Payme |
|---|---|---|---|---|---|---|
| Case Number: | 2012013 | Principal balance: | 214,902.48 | Principal & interest due: | 893.49 | Principal & Interest: |
| Debtor 1: | CHANG-HWA WANG | Interest due: | 1,035.87 | Prepetition fees due: | 25.00 | Monthly escrow: |
| Debtor 2: | | Fees, costs due: | 25.00 | Escrow deficiency for funds advanced: | 0.00 | Private mortage insurance: |
| Last 4 digits to identify: | 7164 | Escrow deficiency for funds advanced: | 0.00 | Projected escrow shortage: | 4,107.06 | Total monthly payment: |
| Creditor: | NewRez LLC d/b/a Shellpoint Mortgage Servicing | Less funds on hand: - | -1,669.48 | Less funds on hand: - | 0.00 | |
| | | Total debt: | 214,293.87 | Total prepetition arrearage: | 5,025.55 | |

Part 4 values: Principal & Interest: 893.49; Monthly escrow: 778.70; Private mortage insurance: 0.00; Total monthly payment: 1,672.19

| Servicer: | NewRez LLC DBA Shellpoint Mortgage Servicing |
|---|---|
| Fixed accrual/daily simple interest/other: | Fixed |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/4/19 | | | -25.00 | NSF Fee Assessmen | 10/1/19 | | | | | -25.00 | | 215101.37 | | 2066.25 | 25.00 | |
| | 893.49 | | | Regular Payment | 4/1/20 | 893.49 | | | | | | | | | | |
| 4/1/20 | | 1728.43 | 1728.43 | Regular Payment | 3/1/20 | 893.49 | 198.89 | 694.60 | 834.94 | | | 214902.48 | | 2901.19 | | |
| 4/1/20 | | -1231.71 | | Tax Bill 1 Disburser | 4/30/20 | 893.49 | | | -1231.71 | | | 214902.48 | | 1669.48 | 25.00 | |

# Shellpoint
## Mortgage Servicing

Shellpoint Mortgage Servicing
PO Box 10826
Greenville, SC  29603 0826
For Inquiries:  (800) 365-7107

| | |
|---|---|
| Analysis Date: | April 16, 2020 |

CHANG-HWA WANG
1001 MAYFLOWER DR
QUAKERTOWN PA  18951

Loan:

Property Address:
1001 MAYFLOWER DR
QUAKERTOWN, PA  18951

**Annual Escrow Account Disclosure Statement - Account History**

The following is an overview of your escrow account with Shellpoint Mortgage Servicing. It contains  the history of escrow payments made on your behalf in the prior year, and a snapshot of the anticipated disbursements for the coming year. Any potential adjustments due to increases or decreases with your escrow items may affect your monthly escrow payment. If your escrow payment increases, your monthly payment will also increase. If the escrow payment decreases, your mortgage payment will decrease.

| Payment Information | Contractual | Effective May 01, 2020 |
|---|---|---|
| P & I Pmt: | $893.49 | $893.49 |
| Escrow Pmt: | $834 94 | $778.70 |
| Other Funds Pmt: | $0 00 | $0 00 |
| Asst. Pmt (-): | $0 00 | $0 00 |
| Reserve Acct Pmt: | $0 00 | $0 00 |
| Total Payment: | $1,728.43 | $1,672.19 |

| Prior Esc Pmt | December 01, 2019 |
|---|---|
| P & I Pmt: | $893.49 |
| Escrow Pmt: | $834 94 |
| Other Funds Pmt: | $0 00 |
| Asst. Pmt (-): | $0 00 |
| Resrv Acct Pmt: | $0 00 |
| Total Payment: | $1,728.43 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | May 01, 2020 |
| Escrow Balance: | $1,669.48 |
| Anticipated Pmts to Escrow: | $0 00 |
| Anticipated Pmts from Escrow (-): | $0 00 |
| Anticipated Escrow Balance: | $1,669.48 |

| Shortage/Overage Information | Effective May 01, 2020 |
|---|---|
| Upcoming Total Annual Bills | $9,344.36 |
| Required Cushion | $1,557.39 |
| Required Starting Balance | $5,776.54 |
| Escrow Shortage | -$4,107.06 |
| Surplus | $0.00 |

**Cushion Calculation:** Because Shellpoint Mortgage Servicing does not set your tax amounts or insurance premiums, your escrow balance contains a cushion of 1,557 39. A cushion is an additional amount of funds held in your escrow in order to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Your lowest monthly balance should not be below 1,557 39 or 1/6 of the anticipated payment from the account.

This is a statement of actual activity in your escrow account from Dec 2019 to Apr 2020.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Date | Payments to Escrow Anticipated | Actual | Payments From Escrow Anticipated | Actual | Description | Escrow Balance Required | Actual |
|---|---|---|---|---|---|---|---|
| | | | | | Starting Balance | 3,103.66 | (1,249.77) |
| Dec 2019 | 775.90 | 811.20 | | * | | 3,879 56 | (438 57) |
| Jan 2020 | 775.90 | 834.94 | | * | | 4,655.46 | 396.37 |
| Feb 2020 | 775.90 | 834.94 | | * | | 5,431 36 | 1,231.31 |
| Mar 2020 | 775.90 | 834.94 | | * | | 6,207 26 | 2,066.25 |
| Apr 2020 | 775.90 | 834.94 | 1,198.20 | 1,231.71 | * Town Tax | 5,784 96 | 1,669.48 |
| | $3,879.50 | $4,150 96 | $1,198.20 | $1,231.71 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.  If you want a further explanation, please call our toll-free number.

P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

Shellpoint Mortgage Servicing
For Inquiries: (800) 365-7107

| | | Analysis Date: | | |
|---|---|---|---|---|
| | | Loan: | | April 16, 2020 |

### Annual Escrow Account Disclosure Statement - Projections for Coming Year

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.

| Date | Anticipated Payments | | | Escrow Balance | |
|---|---|---|---|---|---|
| | To Escrow | From Escrow | Description | Anticipated | Required |
| | | | Starting Balance | 1,669.48 | 5,776.54 |
| May 2020 | 778.70 | | | 2,448.18 | 6,555.24 |
| Jun 2020 | 778.70 | | | 3,226 88 | 7,333.94 |
| Jul 2020 | 778.70 | | | 4,005 58 | 8,112.64 |
| Aug 2020 | 778.70 | 5,434.65 | School Tax | (650.37) | 3,456.69 |
| Sep 2020 | 778.70 | 2,678 00 | Hazard | (2,549.67) | 1,557.39 |
| Oct 2020 | 778.70 | | | (1,770.97) | 2,336.09 |
| Nov 2020 | 778.70 | | | (992.27) | 3,114.79 |
| Dec 2020 | 778.70 | | | (213.57) | 3,893.49 |
| Jan 2021 | 778.70 | | | 565.13 | 4,672.19 |
| Feb 2021 | 778.70 | | | 1,343 83 | 5,450.89 |
| Mar 2021 | 778.70 | | | 2,122 53 | 6,229.59 |
| Apr 2021 | 778.70 | 1,231.71 | Town Tax | 1,669 52 | 5,776.58 |
| | $9,344.40 | $9,344.36 | | | |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)

Your ending balance from the last month of the account history (escrow balance anticipated) is 1,669.48.  Your starting
balance (escrow balance required) according to this analysis should be $5,776.54.  This means you have a shortage of 4,107.06.
This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's
deposit, in which case we have the additional option of requesting payment within 30 days.  We have decided to do nothing.
We anticipate the total of your coming year bills to be 9,344.36.  We divide that amount by the number of payments expected during the coming year to
obtain your escrow payment.

| New Escrow Payment Calculation | |
|---|---|
| Unadjusted Escrow Payment | $778.70 |
| Surplus Reduction: | $0 00 |
| Shortage Installment: | $0 00 |
| Rounding Adjustment Amount: | $0 00 |
| Escrow Payment: | $778.70 |

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED, DISMISSED OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATION PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 Detach Here


Shellpoint Mortgage Servicing
PO Box 10826

Greenville, SC  29603 0826
(800) 365-7107

**Escrow Shortage Reply (This is not a bill)**

Loan Number:

Full Shortage Amount:                    $4,107.06

Payment Amount:            $ _____

Your escrow shortage has been spread over  0 months, resulting in
an additional increase in your monthly payment in the amount of
0.00.

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

IF YOU CHOOSE to pay your shortage in full, please visit
www.ShellpointMtg.com in order to expedite your payment. You
can also mail this coupon with your remittance of the full
shortage amount to the address to the left

NewRez LLC DBA Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this proof of claim for FHLMC VPC 189777. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of NewRez LLC d/b/a Shellpoint Mortgage Servicing.



# NOTE

MIN:

September 28, 2012                          Bethlehem                          PENNSYLVANIA
[Date]                                        [City]                              [State]

1001 Mayflower Dr, Quakertown, PA   18951

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 244,000.00                (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is North American Savings Bank, FSB

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.875            %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st      day of each month beginning on November 01, 2012        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 01, 2042      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 12520 South 71 Highway, Payment Processing, Grandview, MO 64030
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,147.38

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MUCN3200

Form 3200  1/01
*(page 2 of 3 pages)*

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Chang-Hwa Wang          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, N.A.
By:
Crystal Williams / Asst Secretary

see attached **Allonge**

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MUCN3200

Form 3200  1/01
*(page 3 of 3 pages)*



# ALLONGE TO NOTE

**INVESTOR LOAN # :**

**NASB LOAN # :**

**NOTE DATE :** 9/28/2012

**LOAN AMOUNT :** $244,000

**INT RATE:** 3.875

**PROPERTY :** 1001 Mayflower Dr
Quakertown, PA 18951

**BORROWER :** Chang-Hwa Wang

PAY TO THE ORDER OF
**JPMORGAN CHASE BANK, N. A.**
WITHOUT RECOURSE
North American Savings Bank, FSB

ALLISON GLINES
POST CLOSING SUPERVISOR

**Loan Number**



# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") will become effective on: 1ST day of JANUARY, 2019, between CHANG-HWA WANG ("Borrower") and Lender or Servicer (the "Lender"). JPMORGAN CHASE BANK, N.A.

This agreement amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument"), and Timely Payment Rewards Rider, if any, dated SEPTEMBER 28, 2012 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real property described in the Security Instrument and defined therein as the "Property", located at:

<u>1001 MAYFLOWER DR, QUAKERTOWN, PENNSYLVANIA 18951</u>
(Property Address)

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

If my representations in Section 1 continue to be true in all material respects, then the provisions of Section 2 of this Agreement will, as set forth in Section 2, amend and supplement (i) the Security Instrument, and (ii) the Note. The Security Instrument and Note together, as may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

If required, I have provided confirmation of my financial hardship and documents to permit verification of all of my income to determine whether I qualify for the offer described in this Agreement. This Agreement will not take effect unless and until the Lender signs it. I further understand and agree that the Lender will not be obligated or bound to make any modifications of the Loan Documents if I fail to meet any of the requirements under this Agreement.

1. **My Representations**. I represent to the Lender and agree:

    A.  I am experiencing a financial hardship and, as a result, am either in default under the Loan Documents or a default is imminent.

    B.  The Property is neither in a state of disrepair, nor condemned.

    C.  There has been no impermissible change of ownership of the Property since I signed the Loan Documents. A permissible change of ownership would be any transfer that the Lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

    D.  I am not a party to any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

    E.  If required, I have provided documentation for all income that I earn.

    F.  All documents and information I provide pursuant to this Agreement are true and correct.

LOAN MODIFICATION AGREEMENT - BAU MOD GLOBAL



*(page 1 of 7 pages)*

**Loan Number**

2. **The Modification**. The Loan Documents are hereby modified as of **JANUARY 01, 2019** ("Modification Effective Date"), and all unpaid late charges are waived. The first modified payment will be due on the date set forth in this Section 2:

A.  The Maturity Date will be: **DECEMBER 01, 2058**.

B.  The modified principal balance of my Note will include all unpaid amounts and arrearages (excluding unpaid late charges) and may include amounts toward taxes, insurance, or other assessments.  The new principal balance of my Note is **$217,819.54** ("New Principal Balance").

C.  Interest will begin to accrue on the New Principal Balance of **$217,819.54** as of **DECEMBER 01, 2018**. The first new monthly payment on the New Principal Balance will be due on **JANUARY 01, 2019**, and monthly on the same date thereafter.

The payment schedule for the modified Loan is as follows:

Interest will accrue on the New Principal Balance at the rate of **3.875%** annually. The monthly payment amount for principal and interest will be **$893.49**, which is an amount sufficient to amortize the New Principal Balance over a period of **480** months.

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal & Interest Payment Amount | Estimated Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins on | Number of Monthly Payments |
|-------|---------------|---------------------------|---------------------------------------------|------------------------------------------|-----------------------|-------------------|----------------------------|
| 1-40 | 3.875% | 12/01/2018 | $893.49 | $785.74, may adjust periodically | $1,679.23, may adjust periodically | 01/01/2019 | 480 |

The above terms in this Section 2.C shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable-rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only option, or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

If my loan is a daily simple interest loan or an average daily balance loan, I understand and agree that interest will accrue daily and payments will be applied as of the date received by the Lender according to the terms of the Loan Documents. Interest accrues by applying the ratio of the annual interest rate over the number of days in the year (365 or 366 in a leap

LOAN MODIFICATION AGREEMENT - BALLMOD GLOBAL

Loan Number

year), multiplied by the principal balance, multiplied by the actual number of days the principal balance is outstanding.

All payment amounts specified in this Agreement assume that all payments will be made on the payment due date throughout the life of the loan. If I pay before or after the payment due date, the amount of interest will vary and, if my payment is an amortizing payment, the amount allocated between interest and principal will vary. For example, if I pay a monthly amortizing payment after the due date, more of the payment will go toward interest and less toward principal. As a result, the principal may be reduced more slowly over the term of the loan, and there could be a principal balance due at the maturity date of the loan. All accrued and unpaid interest will be applied before any amounts are applied toward principal.

Despite any scheduled payment shown in this Agreement, at any scheduled interest rate adjustment date, my monthly payment will be adjusted to an amount necessary to repay the remaining unpaid balance as of the interest rate adjustment date in substantially equal monthly installments of principal and interest over the remaining term of the loan, assuming I pay on the due date. The Lender will not accept multiple monthly payments in advance of their due date.

D. Any amounts remaining unpaid under the Loan Documents, will be paid by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire New Principal Balance, or the Maturity Date.

E. I will be in default if (i) the monthly payments are not made in full by the payment date, or (ii) I do not comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the New Principal Balance will be the rate set forth in Section 2.C.

3. **Additional Agreements**. I agree to the following:

A. That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

B. To comply, except to the extent that they are modified by this Agreement, or by the U.S. Bankruptcy Code, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C. That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms.

D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part

LOAN MODIFICATION AGREEMENT - BAU MOD GLOBAL

Loan Number

of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U.S. Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of no less than 30 days from the date the notice is delivered or mailed within which all sums secured by the Mortgage will come due. If payment of these sums is not made prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

G. If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

I. That, if Borrower is in an active bankruptcy case upon execution of this document, Borrower will cooperate fully with Lender in obtaining any required Bankruptcy Court and trustee approvals in accordance with local court rules and procedures. Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

J. That the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

K. If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement. If Borrower(s) is in an open bankruptcy case but has not yet received a discharge, then this Agreement is not intended as an attempt to

LOAN MODIFICATION AGREEMENT - BAU MOD GLOBAL

Loan Number

collect a debt. Rather the agreement is intended to modify the Loan Documents to enable the Borrower(s) to continue making voluntary payments and retain the Property.

L.  That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

M.  I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**



Loan Number

### TO BE SIGNED BY BORROWER ONLY

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And CHANG-HWA WANG, LOAN NUMBER ████████ITH A MODIFICATION EFFECTIVE DATE OF JANUARY 01, 2019

In Witness Whereof, the Borrower(s) have executed this agreement.

_____    Date: 12, 6, 18

Borrower - **CHANG-HWA WANG**

LOAN MODIFICATION AGREEMENT - BAU MOD GLOBAL

(*page 6 of 7 pages*)

Loan Number ████████████

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK,
N.A. And CHANG-HWA WANG, LOAN NUMBER ██████████ WITH A MODIFICATION EFFECTIVE
DATE OF JANUARY 01, 2019

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _____

Printed Name:

Ashley Griffiths
Vice President

Execution Date: _12 · 19 ·18_____

LOAN MODIFICATION AGREEMENT - BAU MOD GLOBAL

*(page 7 of 7 pages)*

### BUCKS COUNTY RECORDER OF DEEDS
55 East Court Street
Doylestown, Pennsylvania  18901
(215) 348-6209

Instrument Number - 2012082495
Recorded On 10/2/2012 At 2:34:26 PM                    * Total Pages - 17
* Instrument Type - MORTGAGE - CORPORATIONS
  Invoice Number -                   User -  KGB
* Mortgagor - WANG, CHANGHWA
* Mortgagee - NORTH AMER SAV BK
* Customer - LIBERTY ABSTRACT CO
* FEES
  RECORDING FEES            $89.00
  TOTAL PAID                $89.00

Bucks County UPI Certification
On October 2, 2012 By TF

This is a certification page

## DO NOT DETACH

This page is now part
of this legal document.

RETURN DOCUMENT TO:
LIBERTY ABSTRACT CO

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
    the verification process and may not be reflected on this page.

RECEIVED

2012 OCT -2 A 10: 59

BUCKS COUNTY
RECORDER OF DEEDS

Prepared By:
Rebecca Urnise
903 E 104th St, Suite 400
Kansas City, MO  64131

After Recording Return to:
North American Savings Bank, FSB
903 E 104th St, Suite 400
Kansas City, MO  64131

(800) 677-6272
Parcel Number: ████████

Premises:
1001 Mayflower Dr
Quakertown, PA  18951

———————————— [Space Above This Line For Recording Data] ————————————

# PURCHASE MONEY
# MORTGAGE
MIN: ███████████

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **September 28, 2012**         ,
together with all Riders to this document.
**(B) "Borrower"** is **Chang-Hwa Wang and Xia Zhang, Husband and Wife**

Borrower is the mortgagor under this Security Instrument.

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3039 1/01
PACS3039  0508                                    Page 1 of 15

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, or P.O. Box 2026, Flint, MI 48501-2026, and telephone number of tel. (888) 679-MERS.

(D) "Lender" is  North American Savings Bank, FSB

Lender is a  Corporation
organized and existing under the laws of  the state of Missouri
Lender's address is  12498 South 71 Highway, Grandview, MO   64030

(E) "Note" means the promissory note signed by Borrower and dated  September 28, 2012 .
The Note states that Borrower owes Lender Two Hundred Forty Four Thousand And
Zero/100                                                                    Dollars
(U.S. $  $244,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than        October 01, 2042     .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider          ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider               ☐ Biweekly Payment Rider        ☒ Other(s) [specify]
                                                          Legal Desc

(I) "Applicable Law" " means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)"Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)"Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County                                              of  **Bucks**                                              :

      [Type of Recording Jurisdiction ]                                    [Name of Recording Jurisdiction]

SEE ATTACHED EXHIBIT "A" LEGAL DESCRIPTION

Parcel ID Number ███████████████████                    which currently has the address of
**1001 Mayflower Dr**                                                              [Street]
**Quakertown**                [City], **PENNSYLVANIA**            **18951**            [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
PAGS3039   0508                                    Page 3 of 15

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security

Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and

restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property,

then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance In effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the

Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this

Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the

Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____   _____ (Seal)
                                   Chang--Hwa  Wang              -Borrower

_____   _____ (Seal)
                                   Xia Zhang --nonborrowing spouse

_____ (Seal)   _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                 -Borrower

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3039 1/01
PACS3039   0508                            Page 14 of 15

———————————— [Space Below This Line For Acknowledgment] ————————

COMMONWEALTH OF PENNSYLVANIA,    *NORTHAMPTON*    County ss:
    On this 28th        day of  September, 2012        , before me, the
undersigned officer, personally appeared  **Chang-Hwa Wang and Xia Zhang, Husband and**
**Wife**

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Ann E. Bednar, Notary Public
City of Bethlehem, Northampton County
My Commission Expires April 14, 2016

_Mary Ann E. Bednar_

_____
Title of Officer

**Certificate of Residence**
    I,  _Kaya Forber_        do hereby certify that the
correct address of the within named Mortgagee is 3300 S.W. 34th Avenue, Suite 101, Ocala, Florida
34474 or P.O. Box 2026, Flint, Michigan 48501-2026.

    Witness my hand this    28ᵗʰ    day of  September, 2012  .

_____
**Agent of Mortgagee**

## Exhibit A

**ALL THAT CERTAIN** lot or piece of ground situate in Richland Township, County of Bucks, Commonwealth of Pennsylvania, described according to a Plan of Section 1, Quaker Mill Estates made by Urwiler and Walter Inc. dated 1/9/1978 last revised 1/20/1988 and recorded in Plan Book 244, page 69 as follows to wit:

**BEGINNING** at a point on the southwesterly side of Mayflower Drive (50 feet wide), a corner of Lot No. 43; thence along said side of Mayflower Drive, the following two courses and distances: 1) on the arc of a circle curving to the left having a radius of 325 feet the arc distance of 16.12 feet to a point of tangent; 2) South 10 degrees 53 minutes 05 seconds East 65 feet to a point; thence South 81 degrees 08 minutes 19 seconds West 221.99 feet to a point in line of lands now or late of George Posne; thence along same and lands now or late of Stanley Geissinger, North 01 degree 30 minutes 08 seconds West 84.75 feet to a corner of Lot No. 43; thence along same, North 81 degrees 57 minutes 23 seconds East 208.70 feet to the point of beginning.

**BEING** Lot No. 42 on said plan.

**CONTAINING** 17,771 square feet more or less.

BUCKS COUNTY TAX PARCEL ID NO.:

**BEING PART OF THE SAME PREMISES** which Carl L. Young, Jr. and Patricia E. Young, by Deed dated _____ 9-28-2012 _____ and intended to be recorded forthwith, granted and conveyed unto Chang-Hwa Wang and Xia Zhang, in fee.

## BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania   18901
### (215) 348-6209

**Instrument Number - 2018040815**
**Recorded On 7/30/2018 At 8:39:49 AM**       * Total Pages - 3
**\* Instrument Type - MORTGAGE ASSIGNMENT**
**Invoice Number** ████████████
**\* Mortgagor - NORTH AMER SAV BK F S B**
**\* Mortgagee - MORGAN J P CHASE BK N A**
**\* Customer - SIMPLIFILE LC E-RECORDING**
**\* FEES**
| | |
|---|---|
| **RECORDING FEES** | **$71.75** |
| **TOTAL PAID** | **$71.75** |

> Bucks County UPI Certification
> On July 30, 2018 By JJK

> ## This is a certification page
>
> # DO NOT DETACH
>
> ## This page is now part
> ## of this legal document.

**RETURN DOCUMENT TO:**
**NATIONWIDE TITLE CLEARING INC.**
**2100 ALT 19 NORTH**
**PALM HARBOR, FL 34683**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Robin M. Robinson
Recorder of Deeds

\* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

**Prepared By:**
*Judy G Jackson*, JPMorgan
Chase Bank, N.A., 780 Kansas Lane,
Suite A, Monroe, LA, 71203,
800-401-6587

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683
Loan #: ▮

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
▮▮▮▮▮▮▮   -        RICHLAND TWP
      CERTIFIED 07/30/2018 BY JJK
```

## ASSIGNMENT OF MORTGAGE

**Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR NORTH AMERICAN SAVINGS BANK, FSB, ITS SUCCESSORS AND ASSIGNS P.O. BOX 2026, FLINT, MI 48501-2026, (ASSIGNOR), (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 09/28/2012, in the amount of $244,000.00, made by **CHANG-HWA WANG AND XIA ZHANG AS NON-OBLIGOR** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NORTH AMERICAN SAVINGS BANK, FSB, ITS SUCCESSORS AND ASSIGNS,** recorded on 10/02/2012, in the Office of the Recorder of Deeds of **BUCKS** County, **Pennsylvania**, in **Book n/a, Page n/a and Instrument # 2012082495** .

Property is commonly known as: 1001 MAYFLOWER DR RICHLAND TOWNSHIP, QUAKERTOWN, PA 18951.

Dated on __07 / 24 / 2018__ (MM/DD/YYYY)

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR NORTH AMERICAN SAVINGS BANK, FSB, ITS SUCCESSORS AND ASSIGNS**

By: *Judy D Jackson*
_____
        Judy G Jackson
    **ASST. SECRETARY**

PAGE 1

STATE OF LOUISIANA , PARISH OF OUACHITA

On _____07 / 24 / 2018_____ (MM/DD/YYYY),    before    me    appeared
_____Judy G Jackson_____, to me personally known, who did say that he/she/they is/are the
ASST. SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
NORTH AMERICAN SAVINGS BANK, FSB, ITS SUCCESSORS AND ASSIGNS and that the instrument was
signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they
acknowledged the instrument to be the free act and deed of the corporation (or association).

_____Katrina Marie Johnson  68375_____

Notary Public - State of LOUISIANA
Commission expires: Upon My Death

KATRINA MARIE JOHNSON, NOTARY PUBLIC
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 68375

Assignment of Mortgage from:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR NORTH
AMERICAN SAVINGS BANK, FSB, ITS SUCCESSORS AND ASSIGNS P.O. BOX 2026, FLINT, MI
48501-2026, (ASSIGNOR), (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834)**
to:
**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE,
MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **CHANG-HWA WANG AND XIA ZHANG AS NON-OBLIGOR**

All that certain lot or piece of ground situated in
Mortgage Premise: 1001 MAYFLOWER DR RICHLAND TOWNSHIP
      QUAKERTOWN, PA 18951
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

I, _____Judy G Jackson_____ , hereby certify that the below information and address for the
assignee are correct:
**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE,
MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

By: _____Judy G Jackson_____      **ASST. SECRETARY**

PAGE 2

## BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania 18901
### (215) 348-6209

Instrument Number - 2019056148
Recorded On 10/7/2019 At 8:18:38 AM          * Total Pages - 3
* Instrument Type - MORTGAGE ASSIGNMENT
  Invoice Number ▬▬▬▬▬▬   User - JLC
* Mortgagor - JPMORGAN CHASE BANK NATIONAL ASSOCIATION
* Mortgagee - NEWREZ LLC
* Customer - FIRST AMERICAN MORTGAGE SOLUTIONS - CFS
* FEES
  RECORDING FEES          $72.75
  TOTAL PAID              $72.75



| Bucks County UPI Certification On October 7, 2019 By TF |
| --- |

| This is a certification page<br><br>**DO NOT DETACH**<br><br>This page is now part<br>of this legal document. |
| --- |

RETURN DOCUMENT TO:
FIRST AMERICAN MORTGAGE SOLUTIONS - CFS

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Robin M. Robinson
Recorder of Deeds

\* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.



PARCEL NO. ███████████
**PENNSYLVANIA**
COUNTY OF BUCKS
LOAN NO. ███████████
[FHLMC 105 DPD FLOW SEPT 2019 AND FREDDIE
MAC VPC]

████████████████████████████████

WHEN RECORDED MAIL TO:
ATTN: ASSIGNMENT DEPARTMENT, JPMORGAN CHASE BANK, N.A. C/O FIRST AMERICAN MORTGAGE SOLUTIONS, 1795
INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. (208) 528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION located at 700 KANSAS LANE, MC 8000, MONROE, LA 71203, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING located at 55 BEATTIE PLACE, MS#100, GREENVILLE, SC 29601, Assignee, its successors and assigns, that certain Mortgage dated SEPTEMBER 28, 2012 executed by CHANG-HWA WANG AND XIA ZHANG, HUSBAND AND WIFE, Mortgagor, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NORTH AMERICAN SAVINGS BANK, FSB, ITS SUCCESSORS AND ASSIGNS, Original Mortgagee, in the amount of $244,000.00 and recorded on OCTOBER 02, 2012 in the Office of the Register, Recorder, or County Clerk of BUCKS County, State of PENNSYLVANIA, as Document No. 2012082495, more particularly described and commonly known as:

**AS DESCRIBED IN SAID MORTGAGE**
Property Address: 1001 MAYFLOWER DR, QUAKERTOWN, PA 18951
**TOWNSHIP OF RICHLAND**

ASSIGNMENT HISTORY:

Assignment previously recorded from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NORTH AMERICAN SAVINGS BANK, FSB, ITS SUCCESSORS AND ASSIGNS to JPMORGAN CHASE BANK, NATIONAL ASSOCIATON recorded on JULY 30, 2018 as Doc No. 2018040815.

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on _10 - 02 · 2019._

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

Name: _____Candiss Brown_____ ,
Title: _____Vice President_____

STATE OF LOUISIANA        PARISH OF OUACHITA        ) ss.

On _10 - 02 - 2019_, before me appeared _____Candiss Brown_____, to me personally known, who, being by me affirmed, did say that he is the _____Vice President_____, of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION and that the seal affixed to said instrument is the corporate seal of said entity and that the instrument was signed and sealed in behalf of the entity by authority of its Board of Directors and that _____Candiss Brown_____ acknowledged the instrument to be the free act and deed of the entity.

_____Eva Reese_____ (COMMISSION EXP.
_____Lifetime_____ )
NOTARY PUBLIC
ID OR BAR ROLL NUMBER: _____17070_____

EVA REESE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 17070

I do hereby certify that the precise address of the Assignee Residence is:
NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, 55 BEATTIE PLACE, MS#100, GREENVILLE, SC 29601

Name: _____Candiss Brown_____
Title: _____Vice President_____

Page 2 of 2



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF AMENDMENT OF "NEW PENN FINANCIAL,

LLC", CHANGING ITS NAME FROM "NEW PENN FINANCIAL, LLC" TO

"NEWREZ LLC", FILED IN THIS OFFICE ON THE NINTH DAY OF OCTOBER,

A.D. 2018, AT 4:57 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF

THE AFORESAID CERTIFICATE OF AMENDMENT IS THE SEVENTH DAY OF

JANUARY, A.D. 2019.



Jeffrey W. Bullock, Secretary of State

4336363  8100
SR# 20187059692

Authentication: 203582539
Date: 10-10-18

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:57 PM 10/09/2018
FILED 04:57 PM 10/09/2018
SR 20187059692 - File Number 4336363

# STATE OF DELAWARE
## CERTIFICATE OF AMENDMENT

1.    Name of Limited Liability Company:  New Penn Financial, LLC

2.    The Certificate of Formation of the limited liability company is hereby amended
as follows:

> Legal name change. New Penn Financial, LLC's new legal name will be
> NewRez LLC effective January 7, 2019.

**IN WITNESS WHEREOF**, the undersigned have executed this Certificate on
the _____3RD_____ day of _____October_____, A.D._2018_.

By: _____
                  Authorized Person(s)

Name: Kevin Patrick Harrigan        President and CEO - Origination Division;
                                     Board of Managers

                  Print or Type

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Chang Hua Wang | CHAPTER 13 |
| Debtor(s) | NO. 20-12013 JKF |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing do hereby certify that true and correct copies of the foregoing Proof of Claim have been served June 17, 2020, by electronic filing upon those listed below:

Attorney for Debtor(s)
Michael Seth Schwartz, Esq.
Law Office of Michael Seth Schwartz
707 Lakeside Office Park
Southampton, PA 18966

***Bankruptcy Trustee***

Scott F. Waterman, Esq.
Chapter 13 Trustee
2901 St. Lawrence Ave.
Suite 100
Reading, PA 19606

Date: June 17, 2020

**/s/ Brian C. Nicholas, Esquire**
Brian C. Nicholas, Esquire
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-5366
bnicholas@kmllawgroup.com